**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul O'DELL, Defendant-Appellant.**

No. 85–1414.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1986.

Decided Nov. 17, 1986.

Juanita Temple, Asst. U.S. Atty., for plaintiff-appellee.

Miriam Hirsch Sheline, (Court-appointed), Cincinnati, Ohio, for defendant-appellant.

Before WELLFORD, MILBURN and BOGGS, Circuit Judges.

MILBURN, Circuit Judge.

Defendant Paul O'Dell appeals from the decision of the district court denying his motion for a new trial on the basis of newly discovered evidence under Fed.R.Crim.P. 33. For the reasons that follow, we affirm.

## I.

On February 10, 1983, defendant Paul O'Dell was indicted by a federal grand jury on one count of conspiracy to possess with the intent to distribute and to distribute heroin in violation of 21 U.S.C. § 846. He was also indicted on four counts of aiding and abetting another in the distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

A jury trial commenced on April 22, 1983, and the government's case was based primarily upon the testimony of Special Agent Dennis Schoenrock of the United States Drug Enforcement Administration ("DEA"). Schoenrock's testimony was based on an extensive investigation which began in the Fall of 1981. All of the drug transactions in which Schoenrock participated during the course of the investigation occurred in Detroit, Michigan.

Through an informant, Paul Charles, Schoenrock met heroin dealer Gilbert Bak. On September 14, 1981, Shoenrock met with Bak for the purpose of purchasing heroin. Bak led Schoenrock to Moore's West Fort Tavern and then to a house where Bak pointed out the defendant, Paul O'Dell, and stated that O'Dell was the owner of the tavern and that he was the person Bak wished to contact. After speaking with defendant O'Dell briefly, Bak returned to Schoenrock and told him that "he had talked to the man; the arrangements were made through him to go get the heroin," and that Bak and Schoenrock were to meet O'Dell at Blake's Bar. Bak then directed Schoenrock to Blake's Bar where Bak went inside and returned with the heroin.

During this time period, Agent David Michael, who was conducting surveillance, saw defendant Paul O'Dell arrive at Blake's. Michael also saw Bak speak briefly with O'Dell before Bak returned to Schoenrock's car with the heroin. At the trial, Schoenrock testified that "[t]his is the heroin that I purchased that day from Gilbert Bak and Paul O'Dell." However, on cross-examination, Schoenrock admitted that he had never directly received any heroin from O'Dell.

On September 29, 1981, after receiving a telephone call from Paul Charles, Schoenrock met with Bak and Betty Bradley for the purpose of setting up a purchase of two grams of heroin. Bradley left the group to make a telephone call which Bak told Agent Schoenrock was necessary in order for her to contact her supplier. After several attempts, Bradley stated that she had

contacted her supplier and directed the group to Mott's hamburger stand. Later, defendant O'Dell arrived, and Bradley went over to his car and entered the passenger side. At that time, Bak took the purchase money from Schoenrock, went to defendant O'Dell's car, reached in through the passenger's window, then returned to Schoenrock's car and handed Schoenrock two plastic bags containing heroin. Agent Hodges was also conducting surveillance, and his testimony at the trial indicated that Bradley handed the heroin to Bak.

Thereafter, on February 12, 1982, Schoenrock again drove Bak to Moore's West Fort Tavern. After Bak had been inside the tavern for three or four minutes, Schoenrock saw defendant O'Dell exit the bar and drive away. Bak then left the restaurant and told Schoenrock that "the individual did not want to do the deal there," and that they should go to Mott's hamburger stand. While Schoenrock and Bak were waiting at Mott's, defendant O'Dell arrived. Schoenrock gave Bak the purchase money and helped Bak, who was confined to a wheelchair, into the restaurant. At Bak's request, Schoenrock stood outside. Through the window Schoenrock saw Bak count out money and hand it to O'Dell following which O'Dell and Bak left Mott's together. Thereafter, Bak returned to Schoenrock's car and tossed one tinfoil packet containing heroin on the seat of Schoenrock's car. Bak then told Schoenrock that there was only one packet, not two. However, Schoenrock testified that on this occasion he saw O'Dell pass two tinfoil packets to Bak.

On May 17, 1982, Agent Schoenrock went again to Moore's West Fort Tavern, and, after arriving, he determined that he would attempt to speak with defendant O'Dell himself. Schoenrock approached O'Dell and began to discuss the quality of the heroin he had purchased from their mutual friend, Gilbert Bak. Schoenrock complained that Bak had been diluting the heroin, and he told O'Dell he had seen Bak keep one of the packages of heroin that was purchased from O'Dell on February 12, 1982. To further his effort to deal directly with O'Dell, Schoenrock told O'Dell that he no longer wanted to deal through Bak. Schoenrock indicated that he was still in the market for heroin, perhaps in larger quantities if he could get better quality drugs. Defendant O'Dell promised to arrange to have someone called "Bird Dog," who handled his "packages," "take care" of Schoenrock.

A few minutes later, an individual sat next to Schoenrock at the bar and introduced himself as "Bird." He was later identified as Glen Cheaves. Although Special Agent Patricia Naughton observed the conversation between defendant O'Dell and Schoenrock and the subsequent conversation between Schoenrock and Cheaves, she did not hear the conversations. Cheaves agreed to sell Schoenrock a gram of heroin for $600.00, but instructed Schoenrock to act as if neither of them knew O'Dell and not to mention O'Dell's name again. Special Agent Schoenrock left the tavern and went to the federal building to draw out money for the buy. Thereafter, he returned to the bar and asked for the heroin, which Cheaves produced from a shelf underneath a pay telephone in the tavern.

On May 25, 1982, Schoenrock again contacted Cheaves for the purpose of setting up another drug buy. Cheaves asked Schoenrock to meet him at Mott's hamburger stand, a place that Bak had also used for drug transactions. They met and negotiated the terms of the drug deal, and Agent Harry Hensel observed the meeting between Schoenrock and Cheaves in the parking lot. After the meeting, Hensel saw Cheaves make a telephone call, and ten minutes later, Hensel saw defendant O'Dell arrive at Mott's. Cheaves got into O'Dell's car, and they drove first to a residence on South Street and then to Moore's West Fort Tavern.

On May 26, 1982, Schoenrock again contacted Cheaves regarding the purchase. After following Cheaves to Moore's Tavern, Hensel observed defendant O'Dell and Cheaves leave Moore's and go to Carter's hamburger stand. At the hamburger

stand, Cheaves and O'Dell met a man on a motorcycle, and an exchange took place. Subsequently, Cheaves met Schoenrock on a freeway service drive where the transaction was completed.

## PROCEDURAL HISTORY

On May 2, 1983, O'Dell was convicted on each of the five counts for which he was indicted. He was sentenced on January 17, 1984, to concurrent ten-year terms of imprisonment on each count and to a five-year special parole term on the counts of aiding and abetting in the distribution of heroin. He appealed his convictions, and we affirmed his convictions in an unpublished per curiam opinion. *United States v. O'Dell,* 751 F.2d 387 (6th Cir.1984). Certiorari was denied by the United States Supreme Court. *O'Dell v. United States,* — U.S. ——, 106 S.Ct. 1658, 90 L.Ed.2d 201 (1986).

On May 1, 1985, defendant filed a motion for a new trial pursuant to Fed.R.Crim.P. 33. The basis for this motion was the discovery of new evidence in the form of an exculpatory statement made by co-defendant Gilbert Bak on March 10, 1983, at the hearing on his plea of guilty. In response to a question about his activities on September 14, 1981, pertaining to *only one of* the *five* drug transactions involving defendant O'Dell, Bak testified that "Mr. O'Dell never had the dope. I had the dope already because me and the informer was going to split the money that we got from the narcotics agent." O'Dell now argues that the prosecution's failure to provide him with this statement adversely affected the judgment of the jury by denying him a fair trial, resulting in his convictions.

The district court denied the motion for a new trial without a hearing. This appeal followed, and the issues presented for determination are:

A. whether the district court erred in denying defendant's motion for a new trial;

B. whether the district court abused its discretion in denying an evidentiary hearing on the motion; and

C. whether this court should take judicial notice of transcripts from related proceedings which defendant claims support his contention that he is innocent.

## II.

### A.

■ Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent "clear abuse of discretion." *United States v. Allen,* 748 F.2d 334, 337 (6th Cir.1984) (per curiam); *see United States v. Barlow,* 693 F.2d 954, 966 (6th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

■ The following elements must be established before a new trial will be granted:

(1) the new evidence was discovered after the trial;

(2) the evidence could not have been discovered earlier with due diligence;

(3) the evidence is material and not merely cumulative or impeaching; and

(4) the evidence would likely produce an acquittal.

*Barlow,* 693 F.2d at 966.

We first note that there appears to be no question that the exculpatory evidence asserted in this case was discovered after O'Dell's trial. Therefore, the first element has been established.

Defendant O'Dell contends that the second element of the *Barlow* test has also been satisfied because his attorney was diligent. He contends that earlier discovery was not possible since the evidence was within the possession and knowledge of the prosecutor. Furthermore, he emphasizes the fact that his counsel would not normally be present at a co-defendant's plea hearing. The government asserts, however, that the evidence was in the public domain, and, therefore, the prosecutor was not required to produce it.

In *United States v. McMahon,* 715 F.2d 498 (11th Cir.) (per curiam), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983), the defendants claimed that they were denied due process because the state suppressed psychiatric evaluations of the key witness. The court concluded that the defendants' attorney could have obtained the records if he had exercised due diligence, since the existence of the reports was revealed at the trial of a codefendant. *Id.* at 501. The *McMahon* court's analysis effectively refutes defendant O'Dell's contention that his attorney could not be expected to have knowledge of the contents of the transcript taken at Bak's plea hearing. Moreover, other courts addressing the issue have determined that the prosecution is under no duty to produce evidence that is available to a defendant. *See United States v. Jones,* 712 F.2d 115, 121–22 (5th Cir.1983); and *Lugo v. Munoz,* 682 F.2d 7, 9–10 (1st Cir. 1982).

To further support his argument concerning the second element of the *Barlow* test, defendant contends that the law requires only reasonable diligence, and that reasonable diligence does not require the defendant's attorney to attend every hearing involving other witnesses. We need not resolve this dispute as our disposition of the remaining issues establishes that defendant is not entitled to a new trial. Even if we were to assume *arguendo* that defendant O'Dell's counsel acted with reasonable diligence, and that the prosecution was guilty of suppressing evidence favorable to the defendant, O'Dell would still be required to establish the final two elements of the *Barlow* test.

We note that the *Barlow* test is modified in cases involving the suppression of evidence by the prosecution, and in such cases the defendant "should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal." *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). Rather, *Agurs* requires only a showing of materiality, and the test of materiality depends on

the nature of the evidence and the type of request made by the defense in the attempt to discover the exculpatory evidence before trial.

Further, *Agurs* has been modified by the Supreme Court's decision in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), in which the Court adopted two standards for determining the materiality of evidence withheld by the prosecution. *Bagley* suggests that in cases involving the knowing use of perjured testimony by the prosecution, the conviction will be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* at ——, 105 S.Ct. at 3382 (citing *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397). However, in cases involving no requests for exculpatory material, a general request, or a specific request, the evidence will be considered material and the conviction set aside "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at ——, 105 S.Ct. at 3384.

Defendant O'Dell contends that the instant case should be analyzed under the first standard adopted in *Bagley* because his conviction was obtained by the use of evidence that the prosecution knew was false. Specifically, he argues that the prosecution allowed Agent Schoenrock to testify about Bak's statements implicating O'Dell, despite the fact that Bak had made a statement exculpating O'Dell with respect to the September 14, 1981, transaction which, we have noted, concerned only *one* of the *five* drug transactions involving defendant O'Dell.

This contention is without merit. In order to prevail on his claim that his conviction was obtained with the use of evidence that the prosecution knew or should have known was false, "the moving party must show (1) the statements were actually false; (2) the statements were material, ...; and (3) [the] prosecution knew they were false." *United States v. Chagra,* 735

F.2d 870, 874 (5th Cir.1984). Defendant O'Dell has failed to show that Schoenrock's statements regarding the September 14, 1981, transaction were false or that the prosecution knew they were false.

We further note that after deciding to plead guilty, Bak had nothing to lose by attempting to exculpate O'Dell. An exculpatory statement given under such circumstances is of questionable reliability. *See United States v. Metz*, 652 F.2d 478, 480–81 (5th Cir.1981). Moreover, Schoenrock testified on cross-examination that he never actually received any heroin from O'Dell. Therefore, any prejudice O'Dell may have suffered from Schoenrock's statement on direct examination was mitigated by Schoenrock's statement on cross-examination. Accordingly, it is unlikely that the statement regarding the September 14, 1981, transaction, standing alone, "could have affected the judgment of the jury." *Bagley*, 473 U.S. at ——, 105 S.Ct. at 3382.

■ Defendant O'Dell further argues that Bak's statement regarding the September 14, 1981, transaction casts suspicion on each and every statement made by Bak to Schoenrock during the other drug transactions and the entire course of the investigation. Defendant contends that each time the prosecution allowed Schoenrock to testify concerning a statement made by Bak, it knowingly used false evidence in the effort to obtain a conviction.

This argument is without merit. As earlier noted, the exculpatory statement pertained to only one of the five drug transactions involving defendant O'Dell, and exculpatory statements given by co-conspirators are regarded with suspicion. *See Metz*, 652 F.2d at 479–81. Moreover, the evidence corroborating Bak's many statements implicating O'Dell is overwhelming. Considering Bak's exculpatory statement concerning the September 14, 1981, transaction in light of all of the incriminating evidence in the record, we do not view the use of Bak's other statements implicating O'Dell as constituting the knowing use of false evidence by the prosecution.

Accordingly, defendant O'Dell's motion for a new trial will be evaluated under the second standard announced in *Bagley* which mandates reversal of his conviction "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 473 U.S. at ——, 105 S.Ct. at 3384. *See United States v. Christian*, 786 F.2d 203 (6th Cir.1986). In this connection, defendant O'Dell argues that the evidence used to convict him was highly circumstantial and that evidence destroying Bak's credibility would create a reasonable doubt in the minds of the jurors on the issue of his guilt. *See, e.g., United States v. Butler*, 618 F.2d 411, 421 (6th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980).

Defendant is correct in arguing that much of the evidence implicating him in the conspiracy is circumstantial; *i.e.*, that he was present at several of the transactions in which drugs were sold, that his bar was the site of negotiations between agents and drug dealers, and that both Bak and Bradley suggested that O'Dell was their source. Nevertheless, the law is clear that the existence of a conspiracy may be inferred from the circumstances. *Christian*, 786 F.2d at 211; *Butler*, 618 F.2d at 414; *United States v. Hearn*, 496 F.2d 236, 239 (6th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974); *United States v. Chambers*, 382 F.2d 910, 913 (6th Cir. 1967).

In *Christian*, we noted that although presence at the scene of the crime is not in itself sufficient to implicate an individual in a conspiracy, "presence is a material and probative factor which the jury may consider in reaching its decision." 786 F.2d at 211 (quoting *United States v. Kincade*, 714 F.2d 1064, 1065 (11th Cir.1983)). Additionally, "[a] defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." *Christian*, 786 F.2d at 211 (citing *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982)).

Defendant O'Dell seeks to distinguish the instant case from *Christian* and the

cases cited therein on the ground that the facts in those cases provided clearer evidence of the defendant's involvement than is present in this case. Yet, defendant fails to recognize that the case against him contains direct as well as circumstantial evidence. Not only was O'Dell present at these transactions, but he also accepted money from Bak that was given to Bak by Schoenrock for the purpose of purchasing heroin. After O'Dell received the money, he passed two packets to Bak, one of which Bak subsequently passed to Schoenrock and which contained heroin. Furthermore, on May 17, 1982, O'Dell arranged a meeting between Glen Cheaves and Schoenrock for the purposes of a drug buy.

■ In the final analysis, we conclude that disclosure of Gilbert Bak's statement "could not reasonably be construed to 'make the difference between conviction and acquittal.'" *Christian*, 786 F.2d at 210 (quoting *Bagley*, 473 U.S. at ——, 105 S.Ct. at 3380). The evidence supporting an inference of O'Dell's involvement in the conspiracy is substantial. Furthermore, our review of the record in this case supports the conclusion that the district court did not abuse its discretion in denying a new trial as there is no reasonable probability that disclosure of the evidence would have produced a different result. *See Bagley*, 473 U.S. at ——, 105 S.Ct. at 3383; *Christian*, 786 F.2d at 210.

**B.**

■ Defendant contends that the district court abused its discretion by refusing to grant him a hearing before denying the motion for a new trial. The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court. *United States v. Hoffa*, 382 F.2d 856, 866 (6th Cir.1967), *cert. denied*, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); *Metz*, 652 F.2d at 481. Defendant O'Dell relies on *Agurs*, wherein the Court noted that when "the verdict is already of questionable validity, additional evidence of relatively minor importance

might be sufficient to create a reasonable doubt." 427 U.S. at 113, 96 S.Ct. at 2402. *See Wagster v. Overberg*, 560 F.2d 735, 739 (6th Cir.1977).

■ However, viewing Bak's exculpatory statement in light of the entire record, it is certainly of minor significance. There is ample evidence to support the jury's verdict implicating O'Dell in the conspiracy. Therefore, the verdict is not of "questionable validity." Accordingly, we hold that the district court did not abuse its discretion in denying an evidentiary hearing on the motion for a new trial.

**C.**

Finally, defendant O'Dell argues, for the first time on appeal, that this court should take judicial notice of transcripts from related proceedings in which Paul Charles, the informant who originally led Agent Schoenrock to Bak and his co-conspirators, testified concerning his relationship with DEA agents and drug suppliers. In *United States v. Jachimowicz*, No. 82–80325 (E.D.Mich.1983), and *United States v. Means*, No. 82–80230 (E.D.Mich.1983), Charles testified that he received money from DEA agents and from drug suppliers when he arranged a meeting. He also testified that he participated in the sale of inferior drugs to Agent Schoenrock and then received part of the profit from these transactions. Defendant O'Dell argues that Charles' relationship with drug suppliers lends credibility to Bak's exculpatory statement and, therefore, supports the theory that Charles and Bak were attempting to protect their true source by implicating O'Dell.

■ Fed.R.App.P. 10(a) provides that the record on appeal shall consist of "original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court...." This court is not required to enlarge the record on appeal by taking judicial notice of extra-record facts for the first time. *See Kemlon Products and De-*

644

*velopment Company v. United States*, 646
F.2d 223, 224 (5th Cir.), *cert. denied*, 454
U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162
(1981). *See generally* 21 C. Wright and K.
Graham, *Federal Practice and Procedure*
§ 5110 (1977). Nevertheless, it may do so.
*Rodic v. Thistledown Racing Club, Inc.*,
615 F.2d 736 (6th Cir.), *cert. denied*, 449
U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294
(1980); *United States v. Doss*, 563 F.2d
265, 269 n. 2 (6th Cir.1977). In any event,
we have examined the transcripts in question and have concluded that the information contained therein does not mandate the grant of a hearing on the motion for a new trial.

### III.

For the reasons stated, we hold that the district court did not abuse its discretion in denying defendant's motion for a new trial, or in refusing to conduct a hearing on the motion. Accordingly, the judgment of the district court is AFFIRMED.