837 F.2d 1091
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gaston BOUQUETT, Defendant-Appellant.
 No. 87-3423.
 United States Court of Appeals, Sixth Circuit.
 Jan. 28, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this prosecution for conspiracy to distribute Dilaudid,[1] a Schedule II controlled substance, defendant-appellant Gaston Bouquett appeals the district court's order denying his motion for a new trial. Upon consideration, we find no basis for reversal and affirm the district court's decision.
 
 
 2
 Bouquett, an ophthalmologist, was convicted of one count of conspiracy to possess with intent to distribute Dilaudid in violation of 21 U.S.C. Secs. 841(a)(1) and 846 (1982). On July 11, 1986 he was sentenced to five years in prison and fined $10,000 plus the costs of his prosecution. His conviction was affirmed by this court on June 1, 1987. United States v. Bouquett, 820 F.2d 165 (6th Cir.1987).
 
 
 3
 At trial it was established that Bouquett conspired with Ruben Bell, a Dayton pharmacist to illegally distribute Dilaudid. According to the record, the conspiracy began in late 1979 or early 1980 when Bouquett contacted Bell to find out whether he sold Dilaudid. Although Bell did not have any Dilaudid to sell at the time he was initially contacted, he placed an order for the drug and sold it to Bouquett the next day.
 
 
 4
 After their initial meeting and sale, Bouquett and Bell worked out an agreement under which Bouquett would pay bell to supply him with Dilaudid. Bouquett planned to resell the Dilaudid illegally. Pursuant to their agreement, Bell was to receive $800 in profit for every two hundred No. 4 Dilaudid tablets he supplied. In order for the transactions to appeal legal, the transfer was effected in one of two ways. Either Bouquett would write prescriptions for patients for more tablets than they were to receive and pay for, arranging with Bell to receive and pay for the surplus, or Bouquett would simply write totally fictitious prescriptions for his patients and receive and pay for all of the tablets. Under the first method, Bouquett would, for example, write a prescription for a patient for 60 tablets and Bell would give the patient 20 of these and sell the other 40 to Bouquett. Bell's records, however, would show that the patient received 60 tablets. Under the second method, Bouquett would take a prescription pad, patient records, a calendar and different color pens to Bell's Pharmacy about every two weeks. He would arrive after hours and while there he would write fictitious prescriptions using the actual names and addresses of his patients. Bell would then "fill the prescriptions" by selling Bouquett the Dilaudid. Several of Dr. Bouquett's patients testified that prescriptions were written for many more tablets than they received. Bouquett also ordered Dilaudid tablets from Bell and other druggists for delivery to his office.
 
 
 5
 At the time of this appeal, Bouquett was in prison and represented by counsel. He asks us to review the district court's April 2, 1987 denial of his third Motion for a New Trial, and his Motion for Production of Electronic Recordings, papers, and Other Documents. He also appeals the district court's April 6th denial of his Request for an Evidentiary Hearing. Our reasons for affirming the district court's denial of these motions are set forth below.
 
 I.
 
 6
 The standard of review this court uses in reviewing a trial court's determination that a new trial is not warranted is one of "clear abuse of discretion." United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986) (quoting United States v. Allen, 748 F.2d 334, 337 (6th Cir.1984) (per curiam)), cert. denied, 108 S.Ct. 170 (1987).
 
 
 7
 Bouquett requests a new trial on two grounds: 1) that co-conspirator Ruben Bell committed perjury at trial, and 2) that the government failed to turn over allegedly exculpatory evidence before trial. Although the courts have held that if a defendant establishes either of these claims, a new trial may be required, United States v. Agurs, 427 U.S. 97 (1976); Larrison v. United States, 24 F.2d 82 (7th Cir.1928), it is up to the district court to make that determination. However, Bouquett does not challenge the use of any substantive evidence against him. Thus, on appeal the issue before us is whether the district court abused its discretion in denying Bouquett's motion for a new trial.
 
 
 8
 Bouquett bases his claim of perjury upon the following alleged facts:
 
 
 9
 1) Bell was coached by federal agents to change his original statement in order to reach a plea agreement with the government. Bell claimed to have decided to tell the truth after consulting with his minister;
 
 
 10
 2) Bell sold drugs illegally for a long time before the transactions with Bouquett;
 
 
 11
 3) Bouquett could not have received 90 per cent of the Dilaudid obtained by Bell in light of the large number of Dilaudid Bell sold to others during the same time;
 
 
 12
 4) Bell was shorting other customers and substituting drugs in patients' prescriptions in order to obtain drugs for sale to individuals other than Bouquett;
 
 
 13
 5) Bell had been selling drugs illegally, including Dilaudid, to others besides Bouquett.
 
 
 14
 On the issue of perjury the Supreme Court has said that "[a] new trial is required if the 'false testimony could ... in any reasonable likelihood have affected the judgment of the jury ....' " Giglio v. United States, 405 U.S. 150, 154 (1972) (quoting Napue v. Illinois, 360 U.S. 264, 271 (1959)). This reasonable likelihood test is consistent with the "Larrison Rule" which this court adopted in Gordon v. United States, 178 F.2d 896, 900, (6th Cir.1949), cert. denied, 339 U.S. 935 (1950). The "Larrison Rule" essentially requires that the following requirements be met before a motion for a new trial due to false testimony is granted:
 
 
 15
 (a) that the court is reasonably well satisfied that the testimony given by a material witness is false;
 
 
 16
 (b) that without the false testimony the jury might have reached a different conclusion;
 
 
 17
 (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it because it did not know of its falsity until after the trial.
 
 
 18
 See Larrison, 24 F.2d at 87-88.
 
 
 19
 The Larrison Rule does not come into play, however, unless the defendant has acted with due diligence in bringing the alleged perjury to the court's attention. United States v. Robinson, 585 F.2d 274, 278-279 (7th Cir.1978), cert. denied, 441 U.S. 947 (1979). In the instant case, the district court concluded that Bouquett was duly diligent and went on to determine whether it believed Bouquett's claim that Bell's testimony was false.
 
 
 20
 As to claims number one and two in which Bouquett said Bell perjured himself, the court concluded that Bell had not. The court's findings can be summarized as follows:
 
 
 21
 1) Bell did not perjure himself with respect to why he changed his story at the time of his plea agreement with the government. The district court found that he changed his story not because he talked with his minister, but because it was in his best interest to tell the truth.
 
 
 22
 2) The court found that there was no perjury or misleading testimony by Bell regarding his illegal sale of drugs before 1979.
 
 
 23
 Since a district court's finding that testimony at trial is not false is not reviewable, unless it is wholly unsupported by the evidence, United States v. Johnson, 327 U.S. 106 (1946), the evidence evaluated by the district court is crucial. We find that the evidence in the record adequately supports the district court's conclusions, and thus we will not set them aside.
 
 
 24
 Bouquett's remaining three claims of alleged perjury were accepted as true by the district court. Thus, it evaluated them in light of the "reasonable likelihood"/Larrison test, which requires that the court consider whether the jury might have reached a different conclusion without the testimony. The record indicates that the district court was troubled by this issue and evaluated the "new evidence" carefully. It finally concluded that even if Bouquett's "new evidence" were accepted as true in its entirety, the government's case would not be undermined nor would there be "any reasonable likelihood" that the jury's verdict would be affected. Based upon the record, we also hold that this finding is reasonable. Therefore, the district court did not abuse its discretion in denying Bouquett's motion for a new trial on this ground.
 
 II.
 
 25
 Bouquett's second ground for a new trial, and his only ground for an evidentiary hearing, is the government's alleged failure to turn over exculpatory evidence before trial. Bouquett says the government failed to turn over the following exculpatory evidence: 1) the federal agents' knowledge of Bell's history of drug dealing; 2) the history of Bell's Schedule II record-keeping violations; and 3) the information regarding the non-existence of "Bill," the alleged perpetrator of the burglary of Bell']s Pharmacy (from which Dilaudid was allegedly stolen). Bouquett links the motion for a new trial with the motion for an evidentiary hearing by claiming that through an evidentiary hearing he will establish the requisite support for his claims. This, he argues, will necessitate a new trial. The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court. O'Dell, 805 F.2d at 643 (quoting United States v. Hoffa, 382 F.2d 856, 866 (6th Cir.1967), cert. denied, 390 U.S. 294, (1968)). Thus, our standard of review on this issue is also one of abuse of discretion.
 
 
 26
 Although Bouquett correctly relies upon the Supreme Court's holding in Brady v. Maryland, 373 U.S. 83, 87 (1962), "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," his argument for an evidentiary hearing and new trial is severely undermined by two factors. First, in making its decision, the district court assumed that Bouquett's claims were true. In other words, it regarded the items allegedly withheld by the government as existing and actually withheld. Since this is all Bouquett could hope to establish in an evidentiary hearing, the district court's action means there is little reason for having such a hearing. Second, Bouquett's claims that the government failed to disclose Brady materials is without merit because Brady speaks of "material" evidence. In United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3384 (1985), evidence is defined as "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." The district court reviewed the nondisclosed material in light of these standards and concluded that the presence of much other evidence made Bell's perjured testimony relatively unimportant. Thus it found that there was "no reasonable probability" that release of these materials before trial would have changed the jury's verdict.
 
 
 27
 In light of the record and our standard of review, reversal of the district court's decision to deny Bouquett an evidentiary hearing or a new trial is unwarranted. We hold that the district court did not abuse its discretion and hereby AFFIRM its decision.
 
 
 
 [1]
 Dilaudid is used to relieve moderate to severe pain such as the pain associated with cancer, surgery, and heart attacks. It comes in various dosages and is quite potent. For example, a four milligram tablet (No. 4 Dilaudid) is six to seven times more potent than morphine