897 F.2d 530
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Miles TYE, Defendant-Appellant.
 No. 89-3491.
 United States Court of Appeals, Sixth Circuit.
 March 5, 1990.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, John Tye, was convicted after a jury trial of two cocaine offenses. Post-trial, Tye filed a motion for a new trial based upon newly discovered evidence. The motion was supported by affidavits. The district court denied the motion without holding a hearing. Tye now appeals and argues that his motion for a new trial should have been granted.
 
 I.
 
 2
 On August 5, 1988, Linda Thompson was arrested on a cocaine distribution charge. She agreed to cooperate with police who wanted to arrest her supplier, whom she identified as Ronald Horton. The DEA agents also hoped to find out who was supplying Horton. To that end, the agents arranged for Thompson to order a half-kilo of cocaine from Horton on the hope that the order was large enough so that Horton's supplier would also be present at the buy.
 
 
 3
 Upon arriving at the agreed upon location for the delivery of the cocaine, Thompson, in the company of an undercover DEA agent, was unable to find Horton. She called Horton at his girlfriend's house and learned that Horton was with defendant Tye. Thompson left a message for Horton to call. At approximately 10:30 p.m., Horton called Thompson on her car phone. He initially wanted to change the location of the buy to his girlfriend's house, but Thompson, at the direction of the DEA agent, refused. A McDonald's parking lot was then agreed upon.
 
 
 4
 At 11:00 p.m., Tye, driving a 1988 black Cadillac with Horton in the passenger seat, pulled into the McDonald's lot and immediately turned off his lights. He pulled his vehicle around the McDonald's building and came within a few feet of Thompson's car. Thompson saw the car and whistled, but Tye kept going and drove over to the west end of the McDonald's lot. At that point, Tye exited the car and walked over to a telephone located on the wall of a Stop-N-Go convenience store which abuts the McDonald's parking lot. He appeared to use the phone, then returned to the McDonald's parking lot where he began looking around the parking lot. He then re-entered his vehicle, turned the lights back on, pulled back out onto the street and drove around the block. Tye then re-entered the McDonald's lot, turned off his lights again, and pulled up directly beside Thompson's car.
 
 
 5
 Thompson knew Tye, but had had no prior drug dealing with him. After a brief conversation between Tye and Thompson, Horton exited Tye's car and entered Thompson's. Horton was carrying a sweater inside of which was the half-kilo of cocaine. As soon as Thompson made sure Horton had the cocaine, she gave a prearranged signal, and agents who had been in the area approached the two cars and arrested both Tye and Horton.
 
 
 6
 Both Horton and Tye were indicted, but Horton decided to plead guilty and agreed to testify against Tye at trial. Horton testified at the trial that for the past three or four years he had been engaged in the distribution of cocaine in the Cincinnati area. He testified that he acted primarily as a middleman. He indicated he had known Tye for three or four years and that they did cocaine deals together. Tye supplied the cocaine while Horton set up sales and delivery. Horton further testified that when a large quantity of cocaine was involved, Tye would stay in the immediate vicinity of the exchange.
 
 
 7
 As to the Thompson sale, Horton testified that he received a call from Thompson at his girlfriend's house. Thompson wanted a half-kilo of cocaine. Horton was with Tye who told him he could supply it. Horton also explained that, when he and Tye arrived at the McDonald's lot, they did not immediately approach Thompson's car even though they saw it, because they were looking for undercover police vehicles.
 
 
 8
 At trial, Linda Thompson and undercover DEA agents also testified. On November 17, 1988, Tye was convicted of both counts with which he was charged. On March 17, 1989, Tye filed a motion for a new trial based on newly discovered evidence, which evidence was set forth in three sworn affidavits and one signed but unsworn statement.
 
 
 9
 All four of the statements which constituted the newly discovered evidence were from persons who had talked to Horton after his arrest or had overheard him talking to others. Without attempting to detail the contents of the affidavits which are part of the record, suffice it to say that the gist of three of the affidavits was to the effect that Horton was not too worried about his arrest because Tye was "going to take the fall." The fourth affidavit was from an individual who indicated that he overheard Horton tell a bail bondsman that Horton would pay the balance of the money required for Tye's bond if the bail bondsman could get Tye out of jail. At trial, Horton testified as follows:
 
 
 10
 Q. So you participated in getting the bond for Mr. Tye?
 
 
 11
 A. No. She got the bond for him. She [ ] went and borrowed the money from his grandmother.
 
 
 12
 Q. You didn't agree to pay any part of it?
 
 
 13
 A. No. I told her if I could help her--I didn't have any money myself. I could have borrowed some money to help because I figured we were friends.
 
 
 14
 (App. at 37).
 
 
 15
 Tye claims this affidavit contradicts Horton's testimony at trial. Tye argues that this contradiction indicates a predilection to perjury on the part of Horton.
 
 II.
 
 16
 It is well settled that the denial of a motion for a new trial is reviewed under an abuse of discretion standard:
 
 
 17
 The granting or refusal of a motion for a new trial upon the ground of newly discovered evidence rests in the sound discretion of the trial court and a new trial will not be granted unless such evidence would probably bring about a different result. In the absence of a clear showing of abuse of discretion in determining the probable effect of the newly discovered evidence in changing the result of the trial, the action of the district judge in overruling the motion for a new trial will not be disturbed on appeal.
 
 
 18
 United States v. Crowder, 351 F.2d 101, 104 (6th Cir.1965) (citations omitted); see also United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987). In order to obtain a new trial, "[t]he evidence: (1) must have been discovered after trial, (2) must not have been discoverable earlier in the exercise of due diligence, (3) must be material and not merely cumulative or impeaching, and (4) must be likely to produce an acquittal if the case were retried." United States v. Scaife, 749 F.2d 338, 349 (6th Cir.1984).
 
 
 19
 We conclude that the newly discovered evidence here was impeaching in character and would not be likely to produce an acquittal if this case were retried. The hearsay evidence contained in the affidavits is equivocal at best and would do little to further tarnish Horton in the eyes of the jury. The jury already knew of his criminal background and that he was testifying for the government pursuant to a plea bargain. Horton's alleged statements to the effect that he did not need to worry about this prosecution simply do not square with his guilty plea and the fact that he was sentenced to 65 months imprisonment. Horton knew that no matter what happened to Tye, he was going to jail. At most, Horton's comments, as reported in the affidavits, indicated he felt he would take some of the heat off himself by testifying for the government. This is not an admission or indication that such testimony would be untruthful.
 
 
 20
 We also note that although Horton's testimony, if believed, was damaging to Tye, it was by no means the only evidence against Tye in the case.[1]
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 In denying the motion, the district judge indicated in his order that he reviewed the transcript of Linda Thompson (App. 54). Tye finds this reference to Thompson in an order relating to allegedly perjured testimony by Horton to be puzzling. We do not. The trial judge was simply alluding to the fact that there was evidence in the case damaging to Tye other than Horton's testimony