**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Karl A. SCHLEDWITZ, Defendant–
Appellant.**

**Nos. 95–5309, 95–5409.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 16, 1995.

Decided March 27, 1996.

Gary Humble, Assistant U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee.

Ann C. Short (argued and briefed), Herbert S. Moncier (briefed), Knoxville, TN, for Defendant–Appellant.

Before: CONTIE, MILBURN and NORRIS, Circuit Judges.

## ORDER

The court having received a petition for rehearing en banc, and the petition having

been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original hearing panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

MERRITT, C.J., filed a separate dissent in which MARTIN, J., joined.

MERRITT, Chief Judge, dissenting.

I respectfully dissent from the order of the Court declining to grant en banc review in this case. This is a serious case of unconstitutional prosecutorial misconduct involving an obvious *Brady* violation. Generated in a political atmosphere that included an earlier indictment and acquittal of the defendant along with Democratic Congressman Harold Ford of Memphis, the case is a mail fraud prosecution against a member of the former Jake Butcher Democratic political organization in Tennessee. Politics pervades the case. The Republican prosecutors alleged that the defendant, a young Memphis lawyer and aspiring Democratic politician, was Butcher's agent or "nominee" in purchases of stock in Butcher's banks, purchases allegedly designed to manipulate the price of the stock. The indictment asserts that defendant made fraudulent loans from Butcher's bank to effectuate the stock purchases.

The prosecutors did not disclose, and the defendant did not know, that the FBI and the IRS had a thirteen-page 302 statement from Butcher taken seven years before the 1992 trial. As the panel opinion suggests, the statement specifically and expressly exonerated the defendant of acting as Butcher's agent in these transactions. If believed, the statement would acquit the defendant of fraud and bad faith.

The panel decision of our court does not make the connection between the 302 statement and the question of calling Butcher to the stand. It simply says:

Clearly, defendant's counsel could have called Jake Butcher to the stand at the trial to elicit his favorable statements, but they chose not to do so. Since defendant should have been aware of Butcher's opinions, the failure to provide defendant with the FBI 302 report is not a denial of a fair trial with regard to Butcher's substantive comments.

Although it is true that the defendant knew that Butcher could possibly be helpful as a witness if called, the defendant's counsel were evidently afraid that without a prior written statement with which to examine Butcher, Butcher would probably cave in to government pressure and testify falsely against their client or give equivocal testimony. They did not call Butcher to the stand because Butcher, who was then in federal custody, declined to testify voluntarily because of fear of governmental retaliation concerning his parole. Butcher asserted forcefully that he did not want to testify. In the absence of a prior statement, counsel would be defenseless if Butcher turned against the defendant or gave equivocal testimony. Thus, the existence of the unknown, exculpatory 302 statement, defendant asserts, was significant.

The panel describes the exculpatory 302 statement withheld by the prosecutors as follows:

The FBI 302 report reveals that Butcher told the agents that he had approached Schledwitz as a friend to offer him some bank stock that some of Butcher's other friends wanted to sell. Although Butcher admitted that he frequently assisted others in financing purchases of stock from his bank, Butcher could not remember whether he arranged financing for Schledwitz. The report further shows that Butcher stated that Schledwitz did not hold bank stock as a "trustee" [*i.e.*, agent or nominee] for him, that he never told Schledwitz he would take care of interest payments on a loan, and that he never directed people to Schledwitz's law practice.

The panel opinion acknowledges that the prosecution's misconduct represented a serious *Brady* violation and that Judge Hull

below had clearly erred. Although reputable trial counsel swore in a plausible affidavit that knowledge of the existence of the prior 302 statement would have changed their entire trial strategy (J.A. 283), the panel held that the 302 statement was not "material" under *Brady* because "there is no reasonable probability that the outcome of the trial would have been different." (Op. p. 13)

The panel's argument that "defendant should have been aware of Butcher's opinion" even without the 302 statement (op. p. 12) is misplaced in these circumstances because it is the availability of the statement itself to use in examination of Butcher that is the key. There is no more effective tool of examination than a prior written statement in such circumstances. This could have made a significant difference in trial strategy. Had the statement been available, the defense might have called Butcher and put the defendant on the stand rather than follow the unsuccessful strategy adopted in the absence of knowledge of the statement.

There is one other important point concerning the materiality of the 302 report. The report not only contained extensive exculpatory statements made by Butcher in reference to defendant, but also revealed that IRS Agent Jay Horne was present at the Butcher interview. At trial Horne was the prosecution's only expert witness. He was presented in a false light by the prosecution as a neutral advisor who had been hired by the government to trace the defendant's financial records. No mention was ever made by the prosecution of Horne's role in the investigation of defendant in 1985. The District Court denied the defendant's motion for a new trial, incorrectly applying the four-part test, articulated in *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir.1986), for new trial motions based on newly discovered evidence. The District Court erred in failing to recognize that a different test is required when the new trial motion is based on evidence specifically requested by the defendant but knowingly withheld by the prosecution. The higher standard, first articulated in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and refined just last year in *Kyles v. Whitley*, —— U.S. ——, 115 S.Ct.

1555, 131 L.Ed.2d 490 (1995), requires a new trial when undisclosed evidence is "material":

> *A showing of materiality does not require a demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . . Bagley's* touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as *a trial resulting in a verdict worthy of confidence.* A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, —— U.S. at ——, 115 S.Ct. at 1566 (citations omitted and emphasis added).

The panel opinion does not adequately consider the value the 302 report would have served at trial as the vehicle for defendant to impeach the government's sole expert witness, Jay Horne. Defendant reasonably contends that evidence of Horne's presence at the 1985 Butcher interview, a fact unknown to defendant at trial, could have been used by defendant to debunk the false appearance created for the jury that Horne was a disinterested expert hired by the government to review defendant's financial records. Horne could have been shown to have at one time personally investigated the defendant for the IRS.

The panel, while recognizing that impeachment evidence can constitute *Brady* material, concluded without explanation that

> this type of impeachment does not satisfy the *Bagley* materiality standard and, therefore, does not require the granting of defendant's motion for a new trial. The absence of this "impeaching" evidence from the trial does not "undermine confidence in the outcome of the trial" and does not "deprive the defendant of a fair trial."

Panel Op. at 13. Such a cursory dismissal of defendant's due process rights is error. If, as the above language suggests, the panel

meant that this general category of impeachment evidence could never be "material" under *Kyles,* then the panel is simply wrong. *See Kyles,* —— U.S. at ——, 115 S.Ct. at 1565 (disallowing any difference between exculpatory and impeachment evidence for *Brady* purposes). If the panel instead only meant that this particular impeachment evidence is not material in this particular case, then the court is also simply wrong. It seems self-evident that the government's use of Horne as an independent neutral expert created a false impression that would likely affect the jury's view of Horne's testimony, and, if so, would undermine confidence in the outcome of the trial.

The case against the defendant and Congressman Harold Ford, arising out of Butcher bank loans, was tried separately in West Tennessee. It was an extremely weak case, and finally after an earlier hung jury it resulted in an acquittal in Jackson, Tennessee. Likewise, in this case tried in upper East Tennessee, Judge Hull first dismissed the indictment but then reinstated it. He then threw out five out of the eight counts at the end of the government's case and at one point indicated that the case was so weak that he might dismiss the entire case for lack of evidence. Thus, we are not dealing with a strong case that one could have confidence would have resulted in a conviction in the absence of these due process problems.

The court is too deferential to the government and not sufficiently concerned about protecting the rights of the accused. If this *Brady* violation is immaterial and does not make any difference, when will such a violation make a difference? The panel decision unfortunately sends a message to prosecutors that they can engage in serious ethical and constitutional lapses in violation of *Brady* and *Kyles* with impunity. We should not permit that message to go out, particularly in a case like this where the appearance of partisan political motivation by the prosecution exists. Politics and political statements and charges pervaded the government's case from the opening statement until the end. In such a situation, the government should

be held accountable for its obvious misconduct, and a new trial should be granted.