**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Velma BOOKER, Defendant–Appellant.**

No. 00–6022.

United States Court of Appeals,
Sixth Circuit.

Oct. 16, 2001.

Before KENNEDY, GUY, and BOGGS, Circuit Judges.

PER CURIAM.

On April 20, 2000, Velma Booker was found guilty by a jury of both possession with intent to distribute approximately 11.7 grams of cocaine base and possession with intent to distribute and distribution of approximately 0.8 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Booker appeals her conviction on two bases. First, she alleges that the district court improperly admitted hearsay testimony regarding a telephone call made to Booker's cellular telephone and answered by police, in which the caller expressed interest in purchasing drugs from Booker. Second, Booker alleges that the district court improperly denied her motion for a new trial based on new evidence. We affirm.

I

On September 11, 1999, Officers Mark Griffin and Jeremy Hurst of the Henderson Police Department began their patrol duty at approximately 1:00 p.m.. Immediately prior to beginning the shift, Officer Griffin thoroughly searched the back seat of the patrol car for any hidden objects; the search included lifting up and searching underneath the car's removable back seats. Shortly thereafter, the officers arrested Booker—for whom they had a drug arrest warrant—after observing her driving on one of Henderson's main streets. After pulling her over and informing her of why she was stopped, the officers obtained consent to search Booker's car and found, among other things, approximately $930 in cash, a spiral-bound ledger, and two drug scales. Agent Rodney Weaver of the 25th Judicial Drug Task Force of the Selmer Police Department later testified that all of these items are consistent with drug distribution. The officers testified that they did not search Booker's person at that time, but conducted only a superficial weapons frisk.

The officers placed Booker in the back seat of the patrol car, where she waited alone for fifteen minutes while a tow truck was dispatched to tow her car. Officer Griffin testified that he noticed Booker shifting around in the back seat during the ride. Upon reaching the jail, Officer Hurst escorted Booker inside while Officer Griffin locked the car and brought the items seized from Booker's car into the jail. Officer Griffin returned to the car and found four rock-like substances in a

clear baggy, later confirmed to be 11.7 grams of cocaine base, protruding from the back seat cushions. Two narcotics officers later testified that this amount of cocaine base was a distribution amount, not consistent with personal use.

Later in September 1999, Agent Weaver began a drug investigation of Booker, based on information received from a confidential informant, Deborah Smith, that Booker was selling drugs in the Henderson area. As part of the investigation, Agent Weaver recorded several telephone conversations between Smith and Booker, during which Booker attempted to sell three ounces of crack cocaine to Smith for $2,800. However, the deal did not go through because, according to Agent Weaver, Booker insisted that Smith go to Jackson, Tennessee to complete the deal because Booker did not want to transport that large an amount of drugs.

On October 2, 1999, Agent Weaver set up an undercover buy of $100 worth of cocaine from Booker. After meeting Smith at a pay phone, Agent Weaver had Smith call Booker and set up the buy, which took place at a nearby parking lot. Before both left in separate cars to go to the meeting spot, Agent Weaver testified that he searched Smith's person, car, and purse to make sure she had no drugs on her and placed a tape recorder in Smith's purse to record her conversations with Booker.

At the meeting spot, Agent Weaver was positioned across the street watching and taking photographs while Smith waited in the parking lot for Booker. When Booker arrived, Smith entered Booker's car. Booker handed Smith a baggie of crack and Smith gave Booker $100. During the ensuing conversation, which was recorded on the tape recorder in Smith's purse, the two discussed the current sale and the earlier-proposed sale of three ounces of

crack. After the meeting, Smith met Agent Weaver at a predetermined location and gave him the purchased crack, which was later confirmed by laboratory analysis to be 0.8 grams of cocaine base.

Agent Weaver continued his investigation in the days following the purchase, recording several additional telephone conversations between Smith and Booker, in which Booker discussed the earlier purchase and expressed continued interest in selling to Smith the previously discussed three ounces of crack cocaine. On October 12, 1999, Booker agreed to meet Smith in Henderson and sell her four to eight hundred dollars worth of crack cocaine. The meeting was set up for a local parking lot and Smith arrived, wearing a hidden body wire and recorder and under police surveillance. When Booker arrived, she demanded that Smith take her immediately to her buyer and, concerned for Smith's safety, Weaver and other agents stopped Booker's car and arrested Booker. Both a cellular phone and a pager were found in Booker's car and seized.

After the arrest, the cellular phone taken from Booker's car rang, and Agent Robert Heathcock, who had assisted in making the arrest, answered the phone. Agent Heathcock testified that the conversation went as follows:

I answered the phone and asked the subject—I just answered. I said, "Yo."

And she goes, "Where's Thelma?"

And I said, "Thelma's busy."

And the subject said, "Where she at?"

And I said, "She over yonder. What you need?"

And the subject on the other end said something I couldn't understand, and I said, "Who is this?"

She said, "Angela"

And I just hollered, "Angela?" And I said, "What you need?"

She said, "A $25 piece."

And I said—I said, "A $25 piece?"

She said, "Yeah, a $25 piece. Tell her to bring me a $25 piece."

And I said, "Where?"

And she said, "You know where. Tell her she know where to bring it."

And then I messed with her a little, and then I couldn't understand—she said something else, and then she hung up.

The name "Angela" appeared in the spiral-bound ledger found in Booker's car on September 11, 1999.

At trial, prior to Agent Heathcock's testimony, defense counsel objected to the admission of the telephone call on hearsay grounds. The district court allowed the entire conversation, finding that it was not hearsay because it was not an assertion and that the statement was marginally relevant on the issue of intent to sell. The court held that the statement was "offered to prove that someone is calling Ms. Booker's phone to see if she would sell them some drugs."

Also at trial, Smith testified extensively regarding Michael Ray Weaver (no relation to Agent Weaver), through whom, she testified, she met Booker. She testified that Weaver was "an acquaintance" whom she knew because her brother had married into Weaver's family. However, in response to defense counsel's questioning, she denied that she and Weaver were ever more intimately involved and she denied that she had ever smoked crack cocaine with Weaver and Booker. She further denied having questioned Booker about "messing around" with Weaver after Weaver gave both women crack and gave Booker a larger piece. Upon taking the witness stand, Booker testified that Smith had smoked crack with her and Weaver, and that Smith had questioned Booker about her relationship with Weaver after Weaver gave Booker a larger piece of crack than he gave to Smith.

After trial and conviction, Booker filed a motion for acquittal or new trial, in which she contended that Smith committed perjury during the trial and that she had new evidence to present on that point. The district court heard Booker's motion during its sentencing hearing. The proffered new evidence consisted of the testimony of Michael Weaver, who testified that he knew both Booker and Smith, that he and Smith had been in a sexual relationship, and that he had seen Smith smoke crack "perhaps" more than ten times.

Defense counsel argued that Weaver's testimony proved Smith had lied both about her relationship with Weaver and her own drug use and that these facts showed bias on Smith's part. This was significant because of Booker's assertion that she was not selling Smith crack cocaine, but that Smith actually supplied crack to Booker to coax Booker into making further deals. The Government argued that even if Smith had committed perjury, it was on collateral matters (since her drug use and relationship with Weaver were not in issue). The district court agreed that the alleged false testimony was on a collateral matter and denied Booker's motion for a new trial.

## II

### *The district court's admission of the telephone conversation*

Booker claims on appeal that the district court erred in allowing Agent Heathcock to testify regarding the substance of the telephone call he received on Booker's phone because his testimony was inadmissible hearsay. Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Booker relies in large part on this court's holding

in *Lyle v. Koehler,* 720 F.2d 426, 429–30 (6th Cir.1983), for the proposition that assertions made only impliedly (here that Booker was a drug dealer) can be the basis for exclusion of a statement on hearsay grounds.

We decline to reach the question of whether the testimony was inadmissible hearsay. Even if we were to assume that Booker is correct and the testimony was inadmissible hearsay, admitting it would have been harmless error. As the Federal Rules of Criminal Procedure state, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." FED. R. CRIM. P. 52(a). Further, as this court has held, error is harmless "unless it is more probable than not that the error materially affected the verdict." *United States v. Hernandez,* 227 F.3d 686, 698 (6th Cir.2000). In making these determinations, the court should examine the entire record. *See United States v. Branham,* 97 F.3d 835, 851 (6th Cir.1996).

In the present case, there was extensive evidence, aside from the telephone conversation, that Booker was guilty of both counts upon which she was convicted. On September 11, 1999, when Officer Griffin arrested Booker on an active drug arrest warrant, he found two drug scales, more than nine hundred dollars in cash, and a notebook that testimony showed was a drug ledger. After Booker was taken to jail, Officer Griffin found 11.7 grams of cocaine base, an amount consistent with distribution, in the back seat of his patrol car. Further, there was extensive evidence that Booker repeatedly tried to set up a three-ounce crack sale with the informant, Smith. On October 2, 1999, Booker sold 0.8 grams of crack to Smith, all the while under audio and video police surveillance.

■ Given all of this evidence, we can not conclude that it is more probable than not that any improper admission of the telephone call altered the verdict in this case. This court has repeatedly held that the improper admission of hearsay evidence is harmless error when other, independent evidence strongly supports the guilty verdict. *See United States v. Rogers,* 118 F.3d 466, 478–79 (6th Cir.1997) (holding that possible erroneous admission of hearsay evidence was harmless error where "sufficient other evidence" supported the verdict); *United States v. Fountain,* 2 F.3d 656, 669 (6th Cir.1993) (holding that error in admitting hearsay statement was harmless when it was "more probable than not that the jury would have reached the same verdict based on the evidence properly admitted"); *United States v. Thompson,* 422 F.2d 1104, 1108–09 (6th Cir.1970) (admission of possible hearsay testimony was harmless where proof necessary to support conviction existed from other sources). In the present case, the independent evidence that Booker was in fact guilty of the two counts is more than strong enough to support conviction, even absent the alleged hearsay evidence. Therefore, even if the admission were error, it was harmless, and the district court's conviction should be upheld.

### Booker's motion for a new trial based on new evidence

■ Rule 33 of the Federal Rules of Criminal Procedure states that a district court may grant a new trial to a requesting defendant "if the interests of justice so require." In order to merit a new trial on the basis of newly discovered evidence, this court has held that the defendant must prove: (1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce acquittal. *United States v. O'Dell,* 805 F.2d 637, 640 (6th Cir.1986).

■ On the basis of this standard,[1] it is clear that the district court did not abuse its discretion in not granting Booker a new trial. In fact, Booker has failed to fulfill any of the four *O'Dell* requirements. First, as this court has previously pointed out, if the defendant knew of the general tenor of the evidence during trial, it is not enough to constitute new evidence that a new witness's testimony to the same matter becomes available after trial. *See United States v. Glover,* 21 F.3d 133, 138 (6th Cir.), *cert. denied,* 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 314 (1994) (finding that evidence known to defendant during trial was not "newly discovered" merely because testimony supporting the evidence was not previously available); *United States v. Johnson,* No. 92–0144, 1997 WL 63151 (6th Cir. Feb. 12, 1997) (unpublished opinion) (same). Anything Booker knew about Smith and Weaver, she knew at trial. Before Smith had even testified, defense counsel extensively cross-examined Agent Weaver on Smith's relationship with Mike Weaver and her alleged drug use. Further, just prior to Smith's testimony, defense counsel again referenced the allegation at sidebar. Finally, defense counsel vigorously attacked Smith's credibility on these issues during cross examination. Since Booker knew of Smith's alleged perjury at trial, it is not "newly discovered" evidence, and the mere fact that Mike Weaver's testimony to this effect may have become available after trial does not change this. As a result, Booker has failed to fulfill the first and second *O'Dell* requirements.

Booker has also failed to fulfill the third *O'Dell* requirement. Booker argues that Mike Weaver's testimony fulfills requirement three because, contrary to the finding of the district court, the testimony did not go to a collateral issue. Booker's argument is not entirely clear; however, she alleges in her brief to this court that the testimony related to a central issue because it would have "exposed Ms. Smith's bias toward the defendant." However, Booker made the jury at trial keenly aware of her argument that Smith was biased against her and trying to set her up, and Mike Weaver's testimony would have been inadmissible at trial anyway because it represented extrinsic evidence used to impeach a non-party witness (*See* FED. R. EVID. 608(b)). Further, however, Mike Weaver's testimony was offered by Booker merely to impeach Smith, and the fourth *O'Dell* requirement explicitly disallows evidence that is meant merely to impeach from qualifying as new evidence.

---

1. The defense argues that the *O'Dell* standard is the incorrect test to apply and that, because the motion is based on allegedly false evidence having been presented at trial, the appropriate standard is the more lenient test set out by this court in *Davis v. Jellico Community Hospital, Inc.,* 912 F.2d 129, 134 (6th Cir. 1990) (allowing for a new trial when: (1) the court is "reasonably well-satisfied" that a material witness gave false testimony; (2) that without the false testimony, a jury might have reached a different conclusion; and (3) that the moving party was either taken by surprise and unable to meet the new testimony or did not know it was false until after trial). This standard, however, has only been applied by this court in perjury cases in which a material witness later recanted. *See United States v. Bickett,* No. 90–5710, 1991 WL 175285, at *4 (6th Cir. Sept.10, 1991) (unpublished opinion) ("Historically, the *Jellico* test has been applied only in perjury cases in which a material witness has later recanted testimony. In the instant case, third parties are claiming that a material witness perjured himself." (citation omitted)). In the present case, the allegedly new evidence is testimony by a third party alleging that a witness committed perjury as to a collateral matter, and so the traditional *O'Dell* test applies. *See e.g., United States v. Johnson,* No. 96–5524, 1997 WL 63151 (6th Cir. June 17, 1997) (unpublished opinion) (applying *O'Dell* test in case where third person alleged after trial that a material witness had perjured himself).

Finally, Booker fails to fulfill the requirement that the new evidence be likely to produce an acquittal. This is for the same reason discussed in the above discussion of whether any possible error in admitting the telephone conversation was harmless—the fact that the Government presented extensive evidence of Booker's guilt. Independent of Smith's testimony, the government had tape recordings of the conversations between Smith and Booker and photographic evidence of the drug sales. The jury would have been likely to convict Booker on the basis of this evidence alone.

### III

For the foregoing reasons, we AFFIRM the district court's judgment of conviction and its refusal to grant a new trial.