**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James M. ALLEN (84–5336), Leonard Ray Blanton (84–5337),**
**Defendants-Appellants.**

**Nos. 84–5336, 84–5337.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 27, 1984.

Decided Nov. 20, 1984.

See also, 6th Cir., 738 F.2d 440.

John S. McLellan, argued, Kingsport, Tenn., Tyree B. Harris, argued, Dodson, Harris, Robinson & Aden, Nashville, Tenn., for defendants-appellants.

Joe B. Brown, U.S. Atty., Doug Thoresen, John Philip Williams, argued, Asst. U.S. Attys., Nashville, Tenn., for plaintiff-appellee.

Before KEITH and JONES, Circuit Judges, and POTTER, District Judge.*

PER CURIAM.

Appellants appeal the district court's order denying their motion for a new trial based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33. We affirm the judgment of the district court.

Appellants, Leonard Blanton and James Allen, were convicted on June 2, 1981 of numerous counts relating to a liquor license scheme. Upon appeal from their conviction, this court reversed the district court judgment and granted appellants a new trial. 700 F.2d 298. Upon rehearing en banc, however, this Court affirmed the district court judgment. 719 F.2d 815.

While the direct appeal of their convictions was pending in this Court, appellants filed their motion for a new trial. After the Government filed its response, the trial court entered a memorandum and order refusing to certify to this Court that it was inclined to grant the appellants' motion for

new trial. This Court held that the trial court's order was not appealable. 697 F.2d 146.

Following the Supreme Court's denial of appellants' petition for a writ of certiorari, on April 9, 1984, the district court denied appellants' motion for a new trial based upon newly discovered evidence and ordered them to report voluntarily to prison on May 3, 1984. On April 17, 1984, appellants filed this appeal from the district court's order denying their motion for a new trial.

Appellants base their motion upon the post-trial discovery of the facts surrounding the indictment of Jack Ham, the chief prosecution witness at trial. Ham testified in a video-taped deposition under immunity granted by the federal and state governments. In that deposition, Ham denied having skimmed any money at the liquor store operated by himself and his brother. The deposition was introduced at trial despite the fact that the United States Attorney was aware of possible perjury contained in the deposition. Ham's nephew also testified at the trial and stated that Jack Ham had skimmed money from the liquor stores. During the trial, the manager of Jack Ham's liquor store called an IRS agent and said he had lied when questioned earlier about the skimming allegations. The prosecutor then interviewed this employee and two other employees who all changed their stories and accused Ham of skimming. During the trial, the federal government revoked Ham's immunity. On May 18, 1981, almost one month into the trial of appellants, Ham was indicted and this indictment was introduced at the trial upon the appellants' request.

Following his indictment and after the trial of the appellants, Ham successfully sought to have the indictment dismissed on the basis that the immunity revocation was improper. A hearing was held in which both of the Assistant United States Attorneys who prosecuted the case testified.

* Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

One of the attorneys explained the timing and reason for the indictment of Ham by stating, "The first purpose we certainly considered that the impact of that information we had at that stage, the impact it would have on the Blanton trial. I'd be less than truthful if I said we didn't consider that. It was something we considered, it certainly had an effect on the time of the indictment." He reiterated this later in the hearing:

> THE COURT: The problem is you could have taken a lot of time and investigated. You didn't have to revoke it then. You had plenty of time to do it cautiously, carefully, long after the Blanton trial was over.
>
> THE WITNESS: Your Honor, as I stated, and I state to you now, that certainly [the] overriding consideration was the trial.

The other United States attorney testified that as early as March, 1981, the month before the appellants' trial commenced, she became convinced that Ham was lying. She described the timing of the Ham indictment:

> WITNESS: The decision we had was this. We made the decision that we were going to revoke Ham's immunity and that decision was reached first. The next decision was, okay, when do we do it? We can do it now or we can wait until the end of the trial. The decision was reached to do it during the trial for several reasons. As I recall, the main reason was first of all there was no prejudice to Mr. Ham to indict in the middle of the trial, absolutely none. We were convinced he had skimmed, we were convinced we were going to indict him anyway, and we saw no prejudice whatsoever to Mr. Ham to be indicted in the middle of the Blanton trial.
>
> So our next consideration is, okay, if we have to give this *Brady* material to the defense attorneys, they're going to bring it out before the jury, there's no question about it. How can we lessen the impact of it? Our concern at that point, having decided there was no preju-

dice to Mr. Ham as to when we indicted him, whether we waited or indicted him in the middle of the trial, was the Blanton trial. So we decided that since we had to give this *Brady* material to the defense attorneys, if we could foreclose them from arguing, making the argument that, look at, ladies and gentlemen of the jury, they have this sweetheart deal with Jack Ham, they're giving him his liquor store, giving him state immunity, giving him the total federal immunity, and now they have irrefutable proof that Jack Ham has lied to you members of the jury, and have they done anything about it? No. They've done nothing about it, and they aren't going to do anything about it. We could envision the powerful defense argument.

> So we thought, what can we do about that? We thought that we could foreclose the arguments if we indicted Jack Ham in the middle of trial. We did not anticipate that the indictment would be made known to the jury. In fact, we thought that the defense attorneys would resist with everything they had making known to the jury that we had indicted Jack Ham. But we thought if we inform the Judge that we were going to seek an indictment against Ham, that he, at least in fairness to the government would not allow the defense attorneys to make the argument—the *Brady* material would come in, but they would not be allowed to argue this very powerful argument which we envisioned they would make. And so having determined that, we were going to indict him, and there was no prejudice to indict him in the middle of the Blanton trial, of course, we considered the ramifications of the trial.

> And I'm sort of taken with everybody's interpretation of this as a brilliant move on our part, because even in our office and every lawyer that I've talked to said, you're crazy, you're indicting your star witness in the middle of the trial for lying to the grand jury. Did you expect to even go forward, in fact I think the defense attorneys thought at this point we were going to dismiss the case.

It was a total—it was a chance, it was a chance to not make it an absolutely total disaster, where we probably should have dismissed the case. And again, Your Honor, we saw no prejudice to Mr. Ham.

On the basis of this hearing, Ham's indictment was dismissed.

Immediately upon obtaining a copy of the above transcript, the appellants filed a motion for new trial based on newly discovered evidence. The basis for that motion was that the transcript revealed that the United States Attorney caused Ham to be indicted during appellants' trial for the purpose of having an effect upon the jury in hopes of obtaining a conviction. They contend that this is evidence of prosecutorial misconduct entitling them to a new trial.

The district court found that the government had acted properly and that defense counsel, after learning of the government's intent to indict Ham, did not attempt to delay the indictment or to keep the information from the jury. They, in fact, insisted that the jury be told that Ham had been indicted for lying about the skimming. The district court, on this basis, denied appellants' motion for a new trial.

 A motion for new trial on the basis of newly discovered evidence in a criminal trial will not be granted ordinarily unless the newly discovered evidence is of such a nature that it will probably result in an acquittal on a retrial. A trial judge's finding that the newly discovered evidence is not of such a nature to demand a new trial will not be disturbed on appeal unless a clear abuse of discretion is shown. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976); *United States v. Luxenberg*, 374 F.2d 241, 251 (6th Cir. 1967); *accord Music Research, Inc. v. Vanguard Recording Soc. Inc.*, 547 F.2d 192, 196 (2d Cir.1976); *Dugan v. United States*, 521 F.2d 231, 233 (5th Cir.1975).

In the instant case, the trial judge based his denial of the motion upon numerous findings of fact which lay the foundation for his conclusion that there was no abuse of prosecutorial discretion. Those findings are not clearly erroneous and, therefore, must be accepted by this Court. Fed.R.Civ.P. 52(a). Because there was no abuse of prosecutorial discretion, the newly discovered evidence was not of such a nature that it would probably result in acquittal on retrial. The evidence would be valuable only to impeach the chief prosecution witness. Under *United States v. Garner*, 529 F.2d 962 (6th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976), evidence that would impeach the chief prosecution witness is an insufficient basis for a new trial based on newly discovered evidence. We find, therefore, that the district court did not abuse its discretion in denying the motion for new trial.

The judgment of the district court denying the motion for new trial is AFFIRMED.