844 F.2d 789
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephany TSANGES, Defendant-Appellant.
 No. 87-3226.
 United States Court of Appeals, Sixth Circuit.
 April 12, 1988.
 
 Before RALPH B. GUY Jr., and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Stephany Tsanges, was convicted of fourteen counts of mail fraud and one count of wire fraud in 1984. She was sentenced to two years imprisonment, three years probation, and ordered to make restitution in the amount of $20,640.[1] Tsanges appealed, and her conviction was upheld in an unpublished per curiam filed July 11, 1986.[2] On October 1, 1986, Tsanges filed a motion for a new trial and an evidentiary hearing.[3]
 
 
 2
 A hearing was held on the motion for a new trial, but no evidence was taken at the hearing. The trial judge indicated that an evidentiary hearing was not necessary because he would assume the representations of the defendant to be true in ruling on the motion. On January 29, 1987, the trial judge denied the motion and this appeal followed.
 
 
 3
 On appeal, as in the trial court, the defendant identifies three incidents as the basis of her entitlement to a new trial. As to each incident, she contends (1) new evidence was discovered after the trial; (2) the new evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.
 
 
 4
 In denying the motion for a new trial, Judge Spiegel issued a written opinion in which he gave careful consideration to each of defendant's contentions. We agree with his conclusions and the reasoning supporting his conclusions and affirm on the basis of Judge Spiegel's opinion. We write briefly in addition for further clarification.
 
 I.
 
 5
 "Motions for a new trial are not favored and are granted only with great caution." United States v. Garner, 529 F.2d 962, 969 (6th Cir.), cert. denied sub nom. Brown v. United States, 426 U.S. 922 (1976). The conclusion of the trial judge that "the newly discovered evidence is not of such a nature to demand a new trial will not be disturbed on appeal unless a clear abuse of discretion is shown." United States v. Allen, 748 F.2d 334, 337 (6th Cir.1984).
 
 
 6
 Where the motion for a new trial is predicated upon the failure of the government to disclose so-called Brady[4] material, as it is here, there is a substantial body of case law to look to for guidance. The recent Supreme Court opinion in United States v. Bagley, 473 U.S. 667 (1985),[5] is helpful, particularly as to defendant's claim that taped conversations of the defendant were not produced although requested.[6] In Bagley, the government had failed to make known to the defense that two key government witnesses had been paid for information furnished. When the defendant learned of this fact after conviction, he filed a 28 U.S.C. Sec. 2255 motion which was denied by the district court which concluded no relief was justified since the withheld information, if made known during the trial, would not have changed the outcome. The court of appeals reversed, ruling that withholding the information required automatic reversal. The Supreme Court reversed the court of appeals. Before exploring the rationale behind the Supreme Court's opinion, it is necessary first to look more closely at defendant's claim here.
 
 
 7
 The two tapes which the government had and which were not disclosed[7] involved two separate telephone conversations, both occurring on May 16, 1983, one at 4:45 p.m. and the other at 5:23 p.m. The telephone conversations were between the defendant and James Wilson, a co-conspirator who was at that time cooperating with the government. The telephone calls were instigated by R.F. Chitwood, a postal inspector investigating the mail fraud. The telephone conversations, although rather lengthy, are easily summarized. Wilson's premise for the call was that he wanted to meet Tsanges because he was afraid the authorities were about to catch up with him. Wilson made a half-hearted attempt to reassure Tsanges, telling her he would take the rap. Tsanges, who was extremely guarded in her replies throughout,[8] finally agreed to meet with Wilson. On two or three occasions, she also pointedly said that they had nothing to worry about because everything was "legit." It is these comments that defendant claims are exculpatory, and her argument for a new trial is bottomed on the failure to disclose these conversations. There are both factual and legal problems with defendant's contention, however.
 
 
 8
 From a factual standpoint, it is relevant that since it is defendant's conversations which were taped, she obviously knew of the conversations and their content. Second, the government made no use of these tapes at trial, nor did the tapes provide other information which the government used. Third, Tsanges testified at trial and denied involvement in criminal wrongdoing, so the jury had a first-hand opportunity to evaluate her credibility. Fourth, notwithstanding a few self-serving remarks on the tapes, they cannot be construed as exculpatory and would not likely have been used at trial. Despite Tsanges attempts to not say anything incriminating and to keep Wilson from saying anything incriminating, the total "feel" of the tapes is of a woman "running scared" and very much aware that the authorities are closing in. It simply is not the conversation of an innocent, uninvolved person.
 
 
 9
 An analysis of the legal deficiencies in defendant's contentions requires us to return to Bagley. In Bagley, the Court reiterated its holding in Brady that the only disclosure that is required is of evidence "that is both favorable to the accused and 'material either to guilt or to punishment.' 373 U.S. at 87." Bagley, 473 U.S. at 674. We also know from the Court's decision in United States v. Agurs, 427 U.S. 97 (1976), that "[a] fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." 427 U.S. at 104. This is so because "unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose." Id. at 108.
 
 
 10
 In Agurs, the Court distinguished three situations involving discovery by the defendant, after trial, of information favorable to the defendant that was known by the prosecutor but not known by the defense. These three situations were: (1) knowing use of perjured testimony; (2) failure to disclose where no request for disclosure is made; and (3) failure to disclose in response to a specific request for disclosure. Agurs suggests that these three situations be viewed differently. Tsanges agrees and argues that it is the third Agurs example with which we deal here. The Court in Bagley, however, rejected this three-tiered approach and formulated a new test:
 
 
 11
 We find the Strickland formulation of the Agurs test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.
 
 
 12
 Bagley, 473 U.S. at 682.
 
 
 13
 Applying this test to the facts here, we are able to conclude with a high degree of confidence that had defendant been given these tapes in advance of trial the result of the trial would have been no different.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Tsanges is no longer incarcerated but is still on probation and has not as yet paid the ordered restitution
 
 
 [2]
 United States v. Tsanges, No. 85-3007 (6th Cir. July 11, 1986)
 
 
 [3]
 Fed.R.Crim.P. 35 provides that a motion for a new trial, based on the ground of newly discovered evidence, as was filed here, may be made within two years of final judgment
 
 
 [4]
 Brady v. Maryland, 373 U.S. 83 (1963)
 
 
 [5]
 Bagley must be read carefully because only parts I and II of the opinion received majority support
 
 
 [6]
 We address separately only this claim of defendant. Insofar as the handwriting exemplar and the grand jury testimony of the postal inspector are concerned, we rely on Judge Spiegel's opinion
 
 
 [7]
 The government claims these tapes were made available to the first of two attorneys who represented Tsanges but is unable to document this claim. The government also claims that the defendant has her own recordings of these conversations. Defendant's counsel denies this, but we note that the defendant has never filed an affidavit or otherwise personally denied this allegation
 
 
 [8]
 They discuss on the tapes the possibility of Tsange's telephone being bugged and Tsanges hangs up on Wilson two or three times in the course of the conversations