917 F.2d 25
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy L. GREEN (No. 90-5249) and Mary A. Gillespie (No.
90-5250), Defendants-Appellants.
 Nos. 90-5249, 90-5250.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1990.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants-appellants Timothy Green and Maryann Gillespie appeal their jury convictions for mail fraud and conspiracy. For the reasons that follow, we affirm.
 
 I.
 
 2
 Timothy Green and his mother-in-law, Maryann Gillespie, along with their spouses, were the owners and operators of the MicroAge Computer store in Ashland, Kentucky. On October 26, 1988, Green and Gillespie ("the defendants") were charged in a two-count indictment with committing mail fraud in violation of 18 U.S.C. Secs. 1341 and 2, and with conspiring to commit mail fraud in violation of 18 U.S.C. Sec. 371. The indictment charged that Green and Gillespie devised a scheme to defraud an insurance company by filing a false and inflated claim of loss resulting from an alleged burglary and theft of property.
 
 
 3
 The defendants entered pleas of not guilty and filed motions to dismiss the indictment, alleging constitutional violations resulting from pre-indictment delays. A hearing was held on December 13, 1988, but the district judge subsequently referred the motions to a magistrate. On February 15, 1989, the magistrate filed his report recommending that the defendants' motions be denied, but the district judge did not rule on the motions until June 28, 1989, when he entered an opinion and order adopting the magistrate's recommendation to deny the defendants' motions.
 
 
 4
 On June 30, 1989, the defendants moved to dismiss the indictment pursuant to the Speedy Trial Act, 18 U.S.C. Sec. 3162. Following a hearing held on August 18, 1989, the district judge granted the defendants' motion and dismissed the indictment without prejudice. The district judge said that he dismissed the indictment without prejudice because the delay was his fault.
 
 
 5
 On October 11, 1989, Green and Gillespie were reindicted on the same charges made in the original indictment. The district court timely ruled on the defendants' pre-trial motions and the cases proceeded to trial. The government's chief witness was Robert Plymale, Jr., a former employee of the defendants. Plymale testified that he became indebted to Green in the amount of $1,000, and in May 1986 he had a discussion with Green in Gillespie's presence during which Green told him that the debt would be forgiven if Plymale would remove computer equipment from the store and dispose of it so Green could file an insurance claim.
 
 
 6
 Plymale testified that he periodically removed outdated equipment which had no resale value and that both Green and Gillespie saw him remove the equipment. On May 24, 1986, Plymale removed the last load of equipment from the store. He was assisted by his cousin, William Woodall. Plymale and Woodall drove to West Virginia and dumped the equipment over an embankment into the Big Sandy River. Woodall testified that after they dumped the equipment Plymale told him that Green was going to file a police report stating that the equipment had been stolen.
 
 
 7
 At approximately 6:00 p.m., on May 24, 1986, a West Virginia State Trooper found a large quantity of computer equipment on the riverbank and partially submerged in the Big Sandy River. The trooper conducted a visual search of the area and found a wallet containing the identification of William Woodall. The FBI later located Woodall, and on November 13, 1986, he gave a statement describing his participation in removing and disposing of the computer equipment.
 
 
 8
 In the early morning hours of May 25, 1986, Green called the Ashland, Kentucky, police department and reported that there had been a break-in at his computer store. During the course of the investigation, the police learned that the computer equipment had been taken from the workshop area and the basement of the store, while the equipment in the showroom was untouched. Green gave the police a written statement estimating the total value of the missing equipment to be $64,884.01. However, at the trial the government produced testimony valuing the equipment at $37,367.73. Green and Gillespie filed an insurance claim to recover the value of the "stolen" equipment, and Gillespie gave the insurance adjuster an inventory and a revised inventory of losses.
 
 
 9
 On November 20, 1986, Plymale entered the computer store, where he was still employed, and told Green that he was in trouble with the FBI and he needed $1,000. Green told Gillespie to cash a $500 check and give the money to Plymale. Green explained that he gave the money to Plymale because Plymale had recently made a large sale which would entitle him to a commission when the deal closed. Green also testified that he told Gillespie to give Plymale cash because Plymale said he had problems cashing checks because he lacked a valid driver's license.
 
 
 10
 On November 24, 1986, Plymale told an FBI agent about the scheme to defraud the insurance company. On the basis of his interview with Plymale, the FBI agent submitted an affidavit to obtain a search warrant for the computer store. On December 1, 1986, federal agents and local officers executed the search warrant and seized approximately forty-three items, including computer hardware and software, from the computer store. The defendants assert that nothing seized during the raid was used as evidence at the trial. Gillespie testified that she met with FBI agents on March 2 and 3, 1987, and that they wanted her to testify against Green in return for a recommendation that she receive immunity from prosecution, but she declined to cooperate.
 
 
 11
 On November 22, 1989, a jury convicted Green and Gillespie on both counts of the indictment. The defendants filed motions for judgment of acquittal or in the alternative for a new trial. On January 5, 1989, the district court denied the defendants' motions and entered judgment on the verdict. Green received two concurrent two-year sentences, which were suspended, and he was placed on probation for a period of five years. Gillespie received two concurrent eighteen-month sentences, which were suspended, and she was placed on probation for a period of five years. Both defendants were ordered to pay a special assessment of $100.00. This timely appeal followed.
 
 
 12
 The principal issues on appeal are (1) whether the evidence is sufficient to support the convictions; (2) whether the district court erred by failing to dismiss the original indictment with prejudice; (3) whether pre-indictment delay violated the speedy trial guarantee of the Sixth Amendment; (4) whether pre-indictment delay violated the due process guarantee of the Fifth Amendment; (5) whether the district court erred by not dismissing the indictment on grounds of government misconduct or pursuant to Federal Rule of Criminal Procedure 48(b); and (6) whether the district court erred by denying Gillespie's motion for a new trial based on newly discovered evidence.
 
 II.
 A. Sufficiency of the Evidence
 
 13
 The defendants contend that the evidence is insufficient to support their convictions because the government's case rested on Plymale's testimony. The defendants assert that Plymale's credibility was inherently suspect, and they rely on their own testimony to contradict Plymale's testimony regarding the $1,000 debt and the $500 payment. The defendants urge the court to scrutinize Plymale's testimony and their own testimony.
 
 
 14
 "In addressing the sufficiency of the evidence, this Court does not sit as a trier of fact in a de novo trial." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The Supreme Court has stated, "It is for [jurors] and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story." United States v. Bailey, 444 U.S. 394, 414-15 (1980). We have held that "the uncorroborated testimony of an accomplice may support a conviction under federal law." Gallo, 763 F.2d at 1518. Furthermore, "circumstantial evidence alone can sustain a guilty verdict and ... circumstantial evidence need not remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984) (emphasis in original).
 
 
 15
 The evidence in the present case is sufficient to support the convictions. Plymale's testimony, along with the government's other evidence, established the essential elements of mail fraud and conspiracy. See Morda v. Klein, 865 F.2d 782, 785 (6th Cir.1989) (mail fraud elements); United States v. Poulos, 895 F.2d 1113, 1117 (6th Cir.1990) (conspiracy elements). Plymale was an accomplice in the scheme to defraud the insurance company, and his testimony, though contradicted by the defendants, supports the convictions. Moreover, portions of Plymale's testimony were corroborated by Woodall, who assisted in removing and disposing of part of the equipment. As noted earlier, it is the jury's role to judge the credibility of witnesses, and we do not try the case de novo.
 
 
 16
 Circumstantial evidence also supports the convictions. Certain factors suggest that the computer store was not burglarized. The "stolen" equipment was thrown into a river rather than resold by the burglars. The "stolen" equipment was removed from the basement and workshop area, while new equipment in the showroom was untouched. Furthermore, the government offered evidence that the defendants overvalued the equipment in filing the insurance claim, and this is indicative of a scheme to defraud the insurance company. Although this circumstantial evidence may be subject to alternative interpretations, to sustain a guilty verdict, "circumstantial evidence need not remove every reasonable hypothesis except that of guilt." Stone, 748 F.2d at 362 (emphasis in original).
 
 B. Dismissal of Initial Indictment
 
 17
 The defendants next argue that the district court abused its discretion by not dismissing the initial indictment with prejudice. The defendants assert that the district court incorrectly assumed the blame for violating the Speedy Trial Act, and they contend that the district court failed to make the statutory findings of fact required by United States v. Taylor, 108 S.Ct. 2413 (1988).
 
 
 18
 The decision to dismiss with or without prejudice for noncompliance with the Speedy Trial Act is within the discretion of the district court. Taylor, 108 S.Ct. at 2419; United States v. Jones, 887 F.2d 492, 494 (4th Cir.1989), cert. denied, 110 S.Ct. 1137 (1990). "The Speedy Trial Act, however, confines the exercise of that discretion more narrowly, mandating dismissal of the indictment upon violation of precise time limits, and specifying criteria to consider in deciding whether to bar reprosecution." Taylor, 108 S.Ct. at 2423. The Act lists three factors to be considered in deciding whether to dismiss an indictment with or without prejudice:
 
 
 19
 [T]he court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice.
 
 
 20
 18 U.S.C. Sec. 3162(a)(2).
 
 
 21
 "In Taylor the Supreme Court ruled that a district court's dismissal with prejudice under section 3162(a)(2) was an abuse of discretion where the court failed to set out relevant factual findings and to clearly articulate its application of the statutory factors to the facts of the case." Jones, 887 F.2d at 494. The Court held:
 
 
 22
 Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review.
 
 
 23
 108 S.Ct. at 2419. The Supreme Court concluded that the district court abused its discretion under the Speedy Trial Act because it failed to consider all the relevant factors under the Act and because the "factors it did rely on were unsupported by factual findings or evidence in the record." Id. at 2423.
 
 
 24
 The defendants correctly assert that the district court failed to articulate clearly its application of the statutory factors when dismissing the indictment. Two views have emerged on the consequence of a district court's failure to articulate specifically the statutory factors. In United States v. White, 864 F.2d 660, 661 (9th Cir.1988), the Ninth Circuit relied on Taylor and reversed a conviction because the district court failed to make specific factual findings and to discuss the statutory factors in support of its decision to dismiss the original indictment without prejudice. The Ninth Circuit remanded the case to the district court "for an analysis and articulation of the application of the statutory factors" as required by Taylor. Id.
 
 
 25
 On the other hand, in United States v. Jones, 887 F.2d 492, 495 (4th Cir.1989), the Fourth Circuit held, "Though we certainly do not minimize the importance of the Court's holding in Taylor with regard to articulation of the statutory factors, where the record amply supports the district court's decision, we do not believe Taylor requires automatic reversal." Instead, the court applied the abuse of discretion standard and scrutinized the record "to ensure that the judgment is supported in terms of the factors identified in the statute." Id. (quoting Taylor, 108 S.Ct. at 2420). The court distinguished White by observing that "the record here is sufficient for us to make a determination of whether the district court's decision to dismiss without prejudice was an abuse of discretion." Id. The Fourth Circuit applied the statutory factors and concluded that the district court did not abuse its discretion. Id. at 495-96.
 
 
 26
 We shall follow the Fourth Circuit's approach in this case because the record is sufficient for us to review the district court's dismissal of the indictment in terms of the statutory factors. The first factor to be considered is the seriousness of the crime. In Jones, the court recognized that mail fraud is a very serious crime and, therefore, "the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." Jones, 887 F.2d at 495.
 
 
 27
 The second factor to consider is the facts and circumstances which led to the dismissal. In this case, the district judge expressly accepted blame for the delay and stated that "the reason for the delay does not lie at the doorstep of the United States." The district judge stated that "every delay that has come about has been because of something that was filed because of the defendant." The district judge explained that the delay occurred because he did not rule on the defendants' motions and reassign the case. Thus, this factor favors dismissal without prejudice since the government was not responsible for the delay.
 
 
 28
 The third factor to be considered is the impact of a reprosecution on the administration of justice and on the administration of the Speedy Trial Act. Because the delay was not purposeful and the defendants have not shown that they were prejudiced by the delay, this factor also favors dismissal without prejudice. Jones, 887 F.2d at 495; see United States v. Williams, 711 F.2d 748, 751 (6th Cir.1983). Therefore, we hold that the district court did not abuse its discretion by dismissing the indictment without prejudice.
 
 C. Sixth Amendment Claim
 
 29
 The defendants assert that inordinate pre-indictment delay violated their Sixth Amendment right to a speedy trial. The defendants argue that the Sixth Amendment right to a speedy trial should not be triggered only upon physical arrest or indictment. Rather, they assert that other restraints on liberty should be sufficient to invoke the speedy trial guarantee, and they contend that they suffered substantial restrictions on their liberty prior to being indicted.
 
 
 30
 The defendants attempt to expand the protection afforded by the Sixth Amendment right to a speedy trial. The Supreme Court has held "that the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused." United States v. MacDonald, 456 U.S. 1, 6 (1982); United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459 (1971). In Marion, the Supreme Court held:
 
 
 31
 [It] is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.
 
 
 32
 Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest.
 
 
 33
 404 U.S. at 320-21 (footnote omitted). The Court added that the speedy trial clause does not "require the Government to discover, investigate, and accuse any person within any particular period of time." Id., 404 U.S. at 313; see United States v. Loud Hawk, 474 U.S. 302, 312 (1986). Because the defendants claim only that pre-indictment delay violated their Sixth Amendment rights, it is unnecessary to employ the balancing test of Barker v. Wingo, 407 U.S. 514 (1972). See United States v. Vispi, 545 F.2d 328 (2d Cir.1976).
 
 D. Fifth Amendment Claim
 
 34
 The defendants also argue that the inordinate pre-indictment delay violated their due process rights under the Fifth Amendment. The defendants assert that they sustained substantial prejudice in the form of faded memories, drained financial resources, and deflated spirits. The defendants also contend that the delay substantially prejudiced their ability to cross-examine Plymale because he had a faulty memory resulting from the delay. See United States v. Atisha, 804 F.2d 920, 928 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987) (faulty memory of key government witness may satisfy the prejudice prong).
 
 
 35
 The defendants argue that actual prejudice should be presumed in this case "since the inescapable conclusion is that the government delayed intentionally to gain a tactical advantage." Appellant Green's Brief at 22. The defendants maintain that under compelling factual circumstances an indictment may be dismissed on the single ground of intentional prosecutorial delay. See United States v. Alderman, 423 F.Supp. 847, 857 (D.Md.1976). The defendants assert that they can fathom no conceivable justification for the inordinate pre-indictment delay, and they contend that in the absence of a convincing explanation, the court should presume that the delay was intentional to gain a tactical advantage.
 
 
 36
 The Supreme Court has recognized that the due process clause of the Fifth Amendment protects against oppressive pre-indictment delay. United States v. Lovasco, 431 U.S. 783, 789 (1983). Dismissal for pre-indictment delay in this circuit "is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." United States v. Greene, 737 F.2d 572, 574 (6th Cir.1984) (quoting United States v. Brown, 667 F.2d 566 (6th Cir.1982) (per curiam)). Turning first to the second element of the two-part test, we find that the defendants have failed to produce any evidence to rebut the government's claim that the pre-indictment delay resulted from investigative efforts.
 
 
 37
 In Lovasco, the Supreme Court held "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796. The defendants seek to shift to the government the burden of proving that the delay resulted from investigative efforts. However, the burden is on the defendant to show "that the delay between the alleged incident and the indictment was an intentional device on the part of the Government to gain a decided tactical advantage in its prosecution." Greene, 737 F.2d at 574.
 
 
 38
 The defendants have focused their argument on the prejudice element of the two-part test, and they have failed to offer evidence to prove that the government delayed in seeking the indictment so as to gain a tactical advantage. Indeed, the defendants concede, "We can't prove the delay was intentional unless the government admits it." Appellant Green's Brief at 18. Moreover, the original indictment was filed within two years of the last act charged in the indictment, and "the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations." Atisha, 804 F.2d at 928. Since we conclude that the defendants failed to establish the second element of the two-part test, it is unnecessary to decide whether they satisfied the first element by showing substantial prejudice. See Greene, 737 F.2d at 575. Accordingly, we hold that the pre-indictment delay did not deprive the defendants of due process.
 
 E. Government Misconduct
 
 39
 The defendants next argue that the district court should have dismissed the indictment on grounds of government misconduct or pursuant to Federal Rule of Criminal Procedure 48(b). The defendants rely on Bank of Nova Scotia v. United States, 108 S.Ct. 2369 (1988), for the proposition that prejudice may be presumed in cases where pre-indictment government conduct "render[s] the proceedings fundamentally unfair." The defendants identify certain conduct concerning the investigation of this case and suggest that it may be indicative of misconduct by the government.
 
 
 40
 Bank of Nova Scotia involved dismissal of an indictment for prosecutorial misconduct in a grand jury investigation. The defendants' argument is based on a phrase taken from a single sentence in the opinion, and the defendants have taken the phrase out of its proper context. In Bank of Nova Scotia the Court recognized that there "are a class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental." 108 S.Ct. at 2375. The Court explained that "these cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." Id. (emphasis added). The Court cited two examples of such cases: one involving racial discrimination in the selection of grand jurors and one where women had been excluded from the grand jury. Id. The defendants in the present case do not allege any errors compromising the structural protections of the grand jury. Rather, the defendants seek a presumption of prejudice based on unsubstantiated allegations of prosecutorial misconduct. Therefore, we reject the defendants' argument.
 
 
 41
 As for Rule 48(b), the defendants simply argue that the indictment should have been dismissed pursuant to this rule without citing any cases to support their argument. Because the defendants complain only of pre-indictment, pre-arrest delay, their reliance on Rule 48(b) is misplaced. "The rule is applicable only to post-arrest situations." United States v. Primrose, 718 F.2d 1484, 1488 (10th Cir.1983); see United States v. Ciammitti, 720 F.2d 927, 930 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984).
 
 F. Newly Discovered Evidence
 
 42
 Finally, Gillespie argues that the district court erred by denying her motion for a new trial based on newly discovered evidence. During the sentencing hearing, a probation officer testified that Plymale told him after the trial that Gillespie was not involved in the offense. The district court denied Gillespie's motion for a new trial by finding that Plymale's comment merely expressed an uneducated legal conclusion. The district court noted that Plymale adhered to other aspects of his testimony which implicated Gillespie.
 
 
 43
 Gillespie concedes that she bears a heavy burden in seeking a new trial. However, she contends that the atypical facts of this case demonstrate that the district court abused its discretion by not permitting a new trial. Gillespie asserts that the evidence of her participation in the scheme is neutral on its face in that her filing the insurance claim and paying Plymale $500 are not inconsistent with innocent behavior. Gillespie argues that evidence of Plymale's post-trial statement regarding her innocence would likely have resulted in an acquittal because "any further hedging would have reduced Plymale's credibility to a level the jury would not accept, and [a] verdict of not guilty would have resulted." Appellant Gillespie's Brief at 17.
 
 
 44
 "Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent 'clear abuse of discretion.' " United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987). Four elements must be established to warrant a new trial:
 
 
 45
 (1) the new evidence was discovered after the trial;
 
 
 46
 (2) the evidence could not have been discovered earlier with due diligence;
 
 
 47
 (3) the evidence is material and not merely cumulative or impeaching; and
 
 
 48
 (4) the evidence would likely produce an acquittal.
 
 
 49
 Id. The first two elements are easily satisfied in this case since Plymale first made the exculpatory statement after the trial. However, Gillespie does not satisfy the other two elements.
 
 
 50
 In O'Dell, we observed that "the law is clear that the existence of a conspiracy may be inferred from the circumstances." Id. at 642. We added that "[a] defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." Id. (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)). In this case, there is circumstantial evidence implicating Gillespie in the conspiracy. Plymale did not recant his testimony that Gillespie was present when he and Green agreed to the scheme and that Gillespie procured the $500 in cash when Plymale was fleeing from the FBI. Plymale also testified that Gillespie saw him remove the equipment from the store.
 
 
 51
 Gillespie argues that Plymale's exculpatory statement impacts his credibility. However, "evidence that would impeach the chief prosecution witness is an insufficient basis for a new trial based on newly discovered evidence." United States v. Allen, 748 F.2d 334, 337 (6th Cir.1984) (per curiam). Therefore, because the newly discovered evidence is valuable only to impeach Plymale and because there is circumstantial evidence sufficient to support Gillespie's conviction, we hold that the district court did not abuse its discretion by denying Gillespie's motion for a new trial.
 
 III.
 
 52
 Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.